```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    :
CONSTRUCCIONES INTEGRALES DEL CARMEN :
S.A. DE C.V.,                       :
                                    :
                    Plaintiff,      :
                                    :         09 Civ. 1338 (BSJ)
        v.                          :
                                    :
                                    :         MEMORANDUM ORDER
SEALION SHIPPING LTD.,              :
                                    :
                    Defendant.      :
------------------------------------x
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/13/09
```

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rules"), Defendant Sealion Shipping Ltd. ("Sealion") moves to vacate the Court's February 13, 2009 Order Directing Process of Maritime Attachment and Garnishment ("Attachment Order") and dismiss Plaintiff Construcciones Integrales Del Carmen S.A. De C.V.'s ("Cicsa's") Complaint. For the reasons that follow, the Court GRANTS Sealion's motion and dismisses this action.

## BACKGROUND

Sealion is a foreign corporation organized and existing under the laws of the United Kingdom; Cicsa is a foreign corporation with an address in Mexico. On September 18, 2007, representatives from Cicsa and Sealion met in New York, New York

1

to negotiate and finalize a long term Charter Party for the *Toisa Pegasus*, a vessel operated by Sealion as disponent owner. (Affirmation of Richard W. Baldwin ("Baldwin Aff."), ¶ 13.) The Charter Party was executed that day, in the office of Richard Baldwin, a Sealion Director, at 90 Broad Street, New York, New York; Baldwin signed on Sealion's behalf. (Id., ¶14.)

The original terms of the Charter Party required Cicsa to provide Sealion with a bank guarantee to secure its financial obligations. Upon further negotiations, however, the parties entered into a separate Deposit Agreement, pursuant to which Cicsa provided a $12.5 million cash deposit instead of a bank guarantee. (Id., ¶¶ 16-17.) In his capacity as a Sealion Director, Baldwin signed the Deposit Agreement. (Id., ¶18.) The Charter Party and Deposit Agreement both provide for the application of English law and the resolution of any disputes by arbitration in London. (See Baldwin Decl., Ex. A, at 3; Declaration of Michael D. Lax In Accordance With 18 U.S.C. § 1746 ("Lax Decl."), ¶ 6.)

The *Toisa Pegasus* was not delivered by the date set forth in the Charter Party. The parties dispute, however, whether Sealion effectively extended that delivery deadline before Cicsa cancelled the Charter Party.[1]

---

[1] More specifically, the Charter Party provided Cicsa with the right to cancel the Charter Party in the event that the *Toisa Pegasus* was not delivered by the "canceling date" of January 31, 2009. But the Charter Party also allowed

2

On February 5, 2009, Cicsa initiated two London arbitration proceedings against Sealion, pursuant to both the Charter Party and the Deposit Agreement; Sealion has appeared and appointed an arbitrator in both arbitrations. (Id., ¶¶9-12.)  Cicsa filed the instant Complaint on February 13, 2009, seeking issuance of Process of Maritime Attachment and Garnishment of Sealion's property in the amount of $13.5 million.  (See Complaint, ¶ 13). The Court issued the Attachment Order on the same date.  Cicsa has served numerous local banks with process of maritime attachment and garnishment, but it has yet to seize any of Sealion's assets.

## LEGAL STANDARD

Supplemental Admiralty Rule E(4)(f) provides, in relevant part, that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."  Fed. R. Civ. P. Supp. R.

---

Sealion, if it anticipated an inability to deliver by the canceling date, to issue a notice of the date by which the vessel would be ready for delivery. If Cicsa did not cancel the Charter Party within twenty-four hours of Sealion's issuance of such notice, Sealion's noticed delivery date would become the canceling date. (Lax Decl., ¶¶ 14-15.)

The Toisa Pegasus was not delivered by January 31, 2009, after which Cicsa cancelled the Charter Party and demanded the return of its cash deposit. The parties dispute, however, whether Sealion served Cicsa with the above-described notice before Cicsa's cancellation: Sealion contends that it issued the required notice, after which Cicsa's failure to cancel created a new canceling date; Cicsa denies being served with valid notice. (Id., ¶¶ 15-16.)

3

(E)(4)(f). At a Rule E(4)(f) hearing, the burden is on the Plaintiff to demonstrate that the attachment should be maintained. Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 n.5 (2d Cir. 2006). To meet this burden, a plaintiff must demonstrate that: (1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. Aqua Stoli, 460 F.3d at 445.

## DISCUSSION

Sealion moves to vacate the Attachment Order and dismiss the Complaint on two grounds, arguing that Cicsa has neither (1) demonstrated that Sealion is not "found" in this judicial district; nor (2) asserted a valid prima facie maritime claim. Because Sealion prevails on its first contention, the Court does not address its second.

### 1. Sealion's Presence in the Southern District of New York

A defendant is "found" within a district for purposes of Rule B where defendant can be found within the district (1) in terms of jurisdiction and (2) for service of process. Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir.1963); see Aqua Stoli, 460 F.3d at 443 ("[A]ttachment is precluded under Admiralty Rule B(1) only if the defendants have

4

engaged in sufficient activity in the district or the cause of action has sufficient contacts with the district to permit the court to exercise *in personam* jurisdiction over the defendants . . . *and* in addition can be found within the geographical confines of the district for service of process.") (citation omitted). "No matter how convincingly demonstrated the plaintiff's need for security, [the Court] will not authorize attachment against a defendant who is present in the district in both senses." Aqua Stoli, 460 F.3d at 443 (citation omitted).

### a. Jurisdiction

A non-resident or foreign defendant is subject to personal jurisdiction in a district where there exist "minimum contacts" between defendant and the forum state, such that the exercise of jurisdiction over defendant does not violate "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945).

Sealion contends that it is subject to specific personal jurisdiction under New York law,[2] which provides for jurisdiction over a foreign entity that "transacts any business within the state" if the claim arises from these business contacts. See

---

[2] In diversity cases, the issue of personal jurisdiction is governed by the law of the forum state - here, New York's Civil Practice Law and Rules Section 302, New York's long-arm statute - so long as the district court's exercise of jurisdiction comports with the requirements of due process. See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006).

5

D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006).

In order to subject itself to jurisdiction under N.Y. C.P.L.R. § 302(a)(1), Sealion must have purposely "availed itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (2007) (quotation omitted); D.H. Blair, 462 F.3d at 104. To determine whether a defendant has transacted business in New York, courts look at the totality of circumstances concerning that defendant's interactions with, and activities within, the state, including whether the contract at issue was negotiated or executed in New York, whether the defendant visited New York in connection with the contract, and whether the contract is to be governed by New York law under a choice of law clause. See Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22-23 (2d Cir. 2004).

Cicsa argues that "New York has an insufficient relationship to the contract in issue to support specific jurisdiction." (Plaintiff's Memorandum of Law In Opposition to Defendant's Motion to Vacate Maritime Attachment And To Dismiss Action ("Pl.'s Mem."), at 8.) In so doing, it highlights the fact that the Charter Party was not to be performed in New York - the *Toisa Pegasus* was to be delivered in England and operated in Mexican waters - and contends that Sealion's basis for

jurisdiction "comes down to signing the contract in New York." (Pl.'s Mem., at 11.) While "the execution of a contract in New York, by itself, is inadequate to sustain jurisdiction," Berkshire Capital Group, LLC v. Palmet Ventures, LLC, No. 07 Civ 4511, 2008 WL 5233039, at *1 (2d Cir. Dec. 16, 2008) (summary order), Sealion's contacts with New York go well beyond that mere execution. Further, while the Charter Party's place of performance and its choice of law, arbitration and forum selection clauses weigh against a finding of specific jurisdiction, these factors pale in view of the totality of the circumstances and New York's centrality to the transaction of business from which this action arose.

New York's courts have "characterized the situation where a defendant was physically present at the time the contract was made as 'the clearest sort of case in which our courts would have [specific] jurisdiction.'" George Reiner & Co. v. Arnold Schwartz, 41 N.Y.2d 648, 652 (1977) ("Here, Schwartz was physically present in New York at the time the contract, establishing a continuing relationship between the parties, was negotiated and made and, the contract, made in New York, was the transaction out of which the cause of action arose . . . There can be no question that, by his acts, defendant has purposefully availed himself of the privilege of conducting activities in our jurisdiction, thus invoking the benefits and protection of our

laws.") (citing Parke-Burnet Galleries v. Franklin, 26 N.Y.2d 13, 17 (1970).

This is just such a case. As described above, a Sealion Director, Baldwin, maintains an office in New York, New York. Baldwin and other Sealion and Cicsa representatives met at that location, and others within this district, to negotiate, finalize and execute the Charter Party; Baldwin also signed the Deposit Agreement and participated in the drafting, review and approval of both documents in his New York office. Through these interactions and activities, Sealion purposefully availed itself of the privilege of conducting business in New York, and the instant case arises out of that business transaction. See Sunward Elecs., 362 F.3d at 23 ("A cause of action 'arises out of' a defendant's transaction of business in New York for purposes of Section 302(a)(1) when there exists an 'articulable nexus' or a 'substantial relationship' between transactions occurring within the state and the cause of action sued upon."). Finally, the constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements. D.H. Blair, 462 F.3d at 105.

In addition, Cicsa contends that, in light of the Charter Party's forum-selection clause, which requires the resolution of any dispute by arbitration in London, "the parties waived suit

8

in New York" and thereby ensured that Sealion could not be "found," in terms of jurisdiction, in this district. (Pl.'s Mem., at 11.)  The Court is unaware of, and Cicsa has not provided, any controlling authority under which such an arbitration or forum-selection clause operates to exclude a defendant's jurisdictional presence in another forum.[3]  In view of the absence of such authority, the Charter Party's forum-selection clause does not preclude the Court's determination that Sealion can be "found," in terms of jurisdiction, in this district.  See Cantone & Co., Inc. v. Seafrigo, No. 07 Civ. 6602 (PKL), 2009 WL 210682 (S.D.N.Y., Jan. 27, 2009) (finding defendant subject to personal jurisdiction in New Jersey despite the existence of a French forum-selection clause).

### b. Service of Process

Cicsa does not dispute that Sealion can be found within this district for service of process.  Pursuant to Fed.R.Civ.P. 4 and N.Y. C.P.L.R. § 311(a)(1),[4] Sealion is amenable to service

---

[3] Cicsa cites two cases, from the Seventh Circuit and the Eastern District of Wisconsin, for the proposition that a forum-selection clause allows parties to elect "to be present for jurisdictional purposes only in" their selected forum.  Andrews v. Heinold Commodities, Inc., 771 F.2d 184 (7th Cir. 1985) (forum-selection clause establishing Illinois as forum state functions to deprive Indiana federal district court of personal jurisdiction because personal jurisdiction may be waived by parties); Polar Manufacturing Corp. v. Michael Weinig, Inc., 994 F.Supp. 1012 (E.D.Wis. 1998).  It does not appear, however, that any court in this Circuit has adopted or applied this rule, and the Court declines to do so here.

[4] Federal Rule of Civil Procedure 4 states that service of process upon a domestic or foreign corporation shall be effected either by (1) delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process, or (2) pursuant to the law of the state in which the district court

9

of process through its agent and Director, Mr. Baldwin. <u>See</u>, e.g., <u>M'Baye v. World Boxing Ass'n</u>, 429 F. Supp. 2d 652, 659 (S.D.N.Y. 2006) ("service upon a foreign corporation may be accomplished by serving, inter alia, a director of the corporation").

Accordingly, because Cicsa cannot demonstrate that Sealion cannot be found in this district, it falls short of the showing necessary to maintain its attachment. As a result, the Court GRANTS Sealion's motion to vacate the Attachment Order and dismiss the Complaint.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Sealion's motion, vacates the Attachment Order, dismisses the Complaint, and directs the Clerk of Court to close this case.

SO ORDERED:

*/s/ Barbara S. Jones*
BARBARA S. JONES
**UNITED STATES DISTRICT JUDGE**

Dated:   New York, New York
         March 13, 2009

---

is located. <u>See</u> Fed. R. Civ. P. 4(h)(1) & (e)(1). New York law provides: "Personal service upon a corporation . . . shall be made by delivering the summons as follows: (1) upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." <u>N.Y.C.P.L.R.</u> § 311(a)(1).